| DUFRESNE, Judge.
This is an appeal by Ducote Chrysler Plymouth, Inc., plaintiff-appellant, from a *1011 judgment dismissing its suit for damages arising from an alleged misrepresentation of the mileage on a trade-in vehicle by Lenora Basse, defendant-appellee. Because we find no manifest error in the explicit and implicit factual findings underlying the judgment we must affirm it.
The basic facts are these. The vehicle at issue here is a 1989 Plymouth Voyager van. Basse traded the van for another vehicle at plaintiffs dealership on July 11, 1994. At the time of the trade the odometer showed 58,531 miles and that was the number used on the odometer disclosure statement prepared by Ducote and signed by Basse. The van was then sold to Samuel Younter and the mileage was represented to him as 58,531. Several months later, Younter brought the van in for repairs and it was then discovered that it had been driven at least 120,000, and perhaps as much as 180,000, miles. Ducote took back the Dvan and then brought the present suit for damages resulting from an alleged misrepresentation by Basse of the actual mileage on the vehicle.
After trial on the merits, the trial judge found that defendant did not engage in fraud or induced error. He further found that the actual mileage on the vehicle was not a principle motive on Ducote’s part for concluding the purchase of the van from defendant because Ducote knew that the odometer did not reflect the true mileage. He therefore ruled in defendant’s favor. The implicit analysis underlying the judgment is that plaintiffs consent to the contract of sale of the van was not vitiated by fraud or error, and thus that any alleged damages suffered by plaintiff arising from its purchase and re-sale of the vehicle were not attributable to defendant.
Ducote now appeals this judgment, alleging basically that the trial judge improperly ignored the provisions of La. R.S. 32:726.1, and 49 U.S.C. Sec. 32704,32705 and 32710, the state and federal statutes dealing with odometer tampering.
The testimony and evidence presented at trial showed the following series of events. Basse bought the Voyager used on June 2, 1990, with some 40,000 miles showing on the odometer. In October of 1991, Basse brought the van in for servicing and when she picked it up she noticed that the speedometer was not working. She immediately brought it back to the shop and the speedometer/odometer assembly was changed. As required by La. R.S. 32:726.1(D) and 49 U.S.C. Sec. 32704, a sticker showing the 64,923 miles of the old odometer was placed on the driver’s side door post. The 24,000 miles difference in the readings between purchase and replacement of the odometer indicates that Basse was driving the van about 1500 miles per month. Basse testified that the new odometer failed 1¿within a month of its installation and another one was put in. A second sticker was placed on the door post and apparently showed the mileage as 65,-123. This second replacement odometer read zero when installed in November of 1991, according to Basse, and read 58,531 in July of 1994, indicating a monthly usage of about 1800 miles per month.
On July 11, 1994, Basse appeared at plaintiffs dealership to trade the van for another vehicle. Eugene Ducote, Jr. testified that he spoke to Basse about the mileage on the van. He said that he checked the odometer, which read 58,531. He noted that one of the tumblers on the odometer was red and explained that this meant that the instrument had been changed. He said that he asked Basse if that was the correct mileage and she said yes.
Basse testified that when she traded the van she did not know what the actual mileage was or indeed what the mileage was when she originally bought it used. She said that she understood Ducote’s question to be whether the 58,531 reading on the odometer was correct for that instrument, and not whether that number represented the actual mileage on the vehicle. She also stated that she was never asked anything about whether the instru *1012 ment had been changed or about the door post stickers. She said that she never read the odometer statement that she signed and that it was simply one of several papers that the salesman put in front of her for her signature in conjunction with the transaction. Finally, she testified that she never had any intention to mislead or deceive the dealership about the odometer situation or the actual mileage on the van, which she insisted she did not know.
Ducote said that although he knew at the time of the trade that the |4odometer had been changed, he did not check the door post to see what mileage was shown on the required sticker. Apparently, no one in the service department checked for the sticker either, because on November 30,1994, Ducote re-sold the van and represented to the new buyer, Samuel Younter, that the correct mileage was 58,531. In conjunction with this sale, Younter also purchased a Chrysler service contract for the vehicle.
Marie Stanton, a Ducote business office employee, testified that the service contract sold to Younter was entered into the computer soon after the sale. About a week later, on December 8, 1994, Chrysler sent back notice that the service contract was rejected, and gave as the reason “odometer reading invalid.” Younter was never notified by Ducote that his $995 service contract was invalid, but discovered this fact in March of 1995, when he brought the van to another Chrysler dealer for repairs totaling over $600. When Chrysler refused to honor the service contract because of the odometer discrepancy, Younter contacted Ducote about the problem.
At that point, Stanton began a computer search of Chrysler service records which turned up the two odometer replacements. She said that her notes indicated that the computer records showed mileage of 64,-923 on the original odometer when changed on October 25, 1991, and 65,123 on the second odometer when changed on June 10, 1992. Ducote alleged that those miles, when added to the 58,531 on the third odometer, established total actual mileage on the van of over 180,000 miles. However, the record is not clear whether the 65,123 miles shown on the second sticker was a actually a cumulative figure from the first and second | 5odometers, thus making about 120,000 total miles, or represented all new miles as asserted by Du-cote. It was more likely that these were cumulative miles because if these were new miles driven between the end of October and the following June that would have indicated travel by Basse of over 8,500 per month, about five times the average of 1,500 to 1,800 miles per month driven by her during the other years that she owned the van. In any case, because of this discrepancy Ducote took back the van, paid the $600 repair bill, and applied the purchase price and service contract cost to another vehicle which it sold to Younter.
Eugene Ducote testified that the value of the van with 58,000 miles was $4,900, while with 180,000 miles it was only $1,800, a difference of $3,100. No value was given for a van with 120,000 miles. He also said that Younter paid $8,273.16 for the van (a markup of 68% over the trade-in value of $4,900), another $995.00 for the invalid service contract, and that Ducote paid the $660.73 repair bill incurred by Younter, making a grand total of $9,928.89. Ducote said that the van is now in his possession and was worth only $500 as of the date of trial. Even though he admitted that at the time of the trade the difference in value for the vehicle with 58,000 and 180,000 miles was only $3,100, the dealership was nonetheless seeking damages of $9,928.89 less the present $500 value of the van, or $9428. Although we find this claimed amount inexplicable, because we affirm the judgment in defendant’s favor we need not address this issue further.
It was further shown that when its difficulties with Younter arose, Ducote contacted law enforcement authorities and an investigator came to the dealership and removed the two stickers from the door *1013 post of the van. | fiThose stickers were not introduced at trial, and no explanation for their absence appears in the record. Although counsel for defendant represents in brief to this court that no criminal action was pursued by the investigator, no evidence to prove or disprove that assertion appears of record either. In any case, when the problem with Younter was resolved, Ducote brought the present action against Basse.
Plaintiffs petition is styled simply as one for damages. The trial judge nonetheless properly treated it as a suit on a contract of sale in which plaintiff was alleging a vice of consent due to error or fraud as per La. Civ.Code., Art.1948. He made factual findings that there was no such error or fraud in the transaction, that Ducote knew that the odometer did not reflect the true mileage, and that the actual mileage was not a principle motive in the contract. Because these are factual determinations, the standard of review in this court is not whether they are right or wrong, but rather whether there is a reasonable evidentiary basis for them considering the entire record of the case, Stobart v. State Through DOTD, 617 So.2d 880 (La.1993).
There is no question here that Eugene Ducote knew that the odometer had been changed because he saw the red tumbler which he said so indicated. Neither is there any serious question that he was aware of both the state and federal laws which require anyone changing an odometer so as not to show the previous mileage to affix a tag to the driver’s side door post showing that previous mileage. He further testified that neither he nor anyone in his service department ever made any effort to look for such stickers. Finally, it was shown that the two stickers were in their proper places after the car was returned by Younter and an |7investigator removed them. Considering all of this evidence, it was more than reasonable for the trial judge to find that Ducote knew that the odometer did not reflect the true mileage. It was equally reasonable for him to have found that the actual mileage was not a principle motive in the transaction because had it been, Ducote simply would have looked for the legally mandated stickers to ascertain the true facts of the matter. We thus are precluded from setting aside these findings.
As to Basse, the trial judge found that there was neither error induced by her nor fraud committed by her. Although he only noted in his reasons a factual finding that she understood the odometer form as referring to the 58,531 reading on the odometer when she signed it, his ultimate resolution of the matter indicates a further tacit finding that he believed her testimony that she did not intend to deceive the dealership. There was evidence of record to reasonably support these findings, and we thus may not set them aside either.
Ducote argues, nonetheless, that the trial judge improperly ignored the fact that Basse signed a form which she knew did not show the correct total mileage, and in so doing violated both the state and the federal statutes. The applicable federal statute, 49 U.S.C. Sec. 32710(a), specifically provides that an “intent to defraud” is essential to maintenance of a civil action by a private party. As noted above, the trial judge found that Basse had not perpetrated any fraud in the transaction, and thus plaintiff failed to prove an essential element of his claim. The state statute, La. R.S. 32:726.1, makes no provision for a private right of action, but obviously an intentionally false representation as to the mileage of a vehicle would, as here, give rise to an action on the contract of sale. 1 sHowever, as determined earlier in this opinion, plaintiffs contract action was dismissed because the trier of fact found no error or fraud which would vitiate consent to the transaction. We therefore need not address this issue further here.
For the foregoing reasons, the judgment of the trial court in favor of Lenora Basse, *1014 defendant-appellee, dismissing the matter with prejudice is hereby affirmed. All costs of this appeal to be borne by appellant.

AFFIRMED.